UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA                                                      PLAINTIFF

V.                                                        CIVIL ACTION NO. 3:22-CV-404-DPJ-FKB

$76,402.00 U.S. CURRENCY                                                      DEFENDANT

ORDER

This matter is before the Court on the Government's Motion for Summary Judgment [11] as to the claim asserted by Claimant Damon Bates. The Court finds that the motion should be granted in part and denied in part.

I.      Facts and Procedural History

On January 18, 2022, Mississippi Highway Patrol (MHP) troopers stopped a pickup truck driven by Robert Kim and carrying passenger Michael Conner. Davis Decl. [1-1] ¶ 13. Mississippi Bureau of Narcotics (MBN) officers requested the stop shortly after they observed Kim and Conner leave a meeting with a known drug trafficker. *Id.* ¶ 6. The men were carrying duffle bags the officers believed were filled with bulk currency received from the trafficker. *Id.* ¶¶ 11, 12. During the stop, Kim admitted to a trooper that he possessed marijuana, *id.* ¶ 18, and the trooper replied that this fact gave him probable cause to search the vehicle, *id.* ¶ 19. Kim then admitted that there was "some money" in the truck, guessing $30,000, and said the truck and money belonged to Claimant Damon Bates. *Id.*

The troopers searched the truck and found a duffel bag containing four bundles of currency wrapped in aluminum foil. *Id.* ¶ 22. The troopers informed MBN, and two Drug Enforcement Agency task-force officers arrived on scene. *Id.* ¶¶ 22–23. The task-force officers moved the truck to an MHP vehicle-maintenance shop, collected the currency, and seized Kim's

and Conner's cell phones.  *Id.* ¶ 25.  Further investigation revealed that the truck was stolen from a Georgia dealership, *id.* ¶ 26, there were traces of narcotics on the currency, *id.* ¶ 27, and Kim and Bates had communicated about drug-trafficking activities, *id.* ¶ 29.

On July 15, 2022, the Government filed this action for forfeiture in rem against $76,402. Gov't Mem. [12] at 1.  Bates then filed a pro se claim for the currency.  Claim [5].  Bates says he buys and sells cars and had sent Kim and Conner to buy the truck they were driving.  *Id.* at 2.  He also says he gave them the $76,402 to buy a second truck.  *Id.*  On February 15, 2023, after serving Bates with interrogatories and eventually receiving responses, the Government moved for summary judgment.  *See* Gov't Mem. [12] at 2.

After two show-cause orders [13, 14], the motion is now fully briefed and federal-question jurisdiction exists.[1]

II.     Standard

Supplemental Rule G(8) authorizes the Government to move to strike a claim or answer "[a]t any time before trial" "for failing to comply with Rule G(5) or (6), or" "because the claimant lacks standing."  Fed. R. Civ. P. Supp. R. G(8)(c).  The motion "may be presented as a motion for . . . summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  *Id.* G(8)(c)(ii)(B).

---

[1] Under Uniform Local Rule 7(b)(3)(E), the Court may not grant a dispositive motion as unopposed when a party fails to file a timely response.  The Court must instead consider the record and determine whether the movant "is entitled to judgment as a matter of law."  *McDaniel v. Sw. Bell Tel.*, No. 92-2433, 1992 WL 352617, at *1 (5th Cir. Nov. 19, 1992) (per curiam).  Here, the record did not establish a basis for summary judgment, so the Court concluded that full briefing would be preferable.  And while the Government does not directly argue that the case should be dismissed because of the late response, that sanction would be harsh for a pro se claimant.

2

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute over any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.   Analysis

Civil asset-forfeiture proceedings are governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). Under CAFRA

> "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture . . . ." 18 U.S.C. § 983(c)(1).

> Further, if the Government's theory of forfeiture is that the property was involved in the commission of a criminal offense, the Government must establish a "substantial connection" between the property and the offense. *Id.* § 983(c)(3). The claimant then has the burden of proving that he is an innocent owner by a preponderance of the evidence. *Id.* § 983(d)(1).

*United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508–09 (5th Cir. 2008).

Bates made such a claim, but the Government argues that he has failed to establish standing. Gov't Mem. [12] at 10–17. And even assuming standing, it says Bates's claim should be stricken under Rule G(8)(c)(i)(A) because Bates failed to adequately respond to the Government's special interrogatories under Rule G(6). *Id.* at 17–18. The Court will address these arguments in turn.

   A.   Standing

"As a predicate to any action before a federal court, parties must establish that they have proper standing to raise a claim." *United States v. $9,041,598.68*, 163 F.3d 238, 245 (5th Cir. 1998) (citing *United States v. $321,470 in U.S. Currency*, 874 F.2d 298, 302 (5th Cir. 1989)).

> [T]he burden of establishing standing to contest forfeiture is on the claimant seeking to come before the court. A claimant need not prove the merit of his underlying claim. He must, however, be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the [Article III] case-or-controversy requirement and the prudential considerations defining and limiting the role of the court.

*Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir. 2000) (quoting *$9,041,598.68*, 163 F.3d at 245.)

While *Kadonsky* and other older cases mention "prudential considerations," *id.*, that label "is 'misleading.' Rather, the issue is whether, using traditional principles of statutory interpretation, the party 'has a cause of action under the statute,'" *United States v. M/Y Galactica Star*, 13 F.4th 448, 455 (5th Cir. 2021) (quoting *Lexmark Int'l, Inc. v. Static Control*

4

*Components, Inc.*, 572 U.S. 118, 125 (2014)), *cert. denied sub nom. Enron Nigeria Power Holding, Ltd. v. United States*, 142 S. Ct. 1417 (2022).

The Government acknowledges these principles but pays little attention to Article III in the "Argument" section of its brief. It opens that discussion saying Bates cannot demonstrate statutory standing because he "failed to establish, by a preponderance of the evidence, sufficient ownership of the Subject Property to establish standing." Gov't Mem. [12] at 10. And after addressing those issues, the final sentence of the argument adds, "[l]ikewise, there appears to be inadequate dominion, possession, or control over the Subject Property by Bates to even present a colorable claim sufficient to meet Article III standing in this instance." *Id.* at 16–17.

Article III and statutory standing do seem to merge in this case. Bates claims that he owned the cash, and, if he did, he would have a colorable interest in the case (i.e., Article III standing). Likewise, he would have no "cause of action under the statute" without an ownership interest in the cash. *M/Y Galactica Star*, 13 F.4th at 455. The Fifth Circuit has "construed the relevant statutory language to mean that only 'owners' have standing to contest a forfeiture proceeding, broadly interpreting the term 'owner' to 'include any person with a recognizable legal or equitable interest in the property seized.'" *Kadonsky*, 216 F.3d at 508 (quoting *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1111–12 (5th Cir. 1992)).

The bigger questions are what Bates must produce to meet these burdens and whether he produced it. The Government says Bates may not "rely[] on a bare assertion of ownership, particularly where, as here, he has no colorable claim to even a possessory interest in the defendant property." Gov't Reply [19] at 4 (citing *Kadonsky*, 216 F.3d at 508). *Kadonsky* does say that an "unsupported assertion of ownership is insufficient to establish standing." *Kadonsky*,

216 F.3d at 508 (citing *$38,570 U.S. Currency*, 950 F.2d at 1112). But it is unclear from that case what the claimant produced.

The question is more clearly addressed in *$38,570 U.S. Currency*, where the claimant merely stated, "I own the currency." 950 F.2d at 1112. The Fifth Circuit recognized that the claimant "need not prove his case to establish standing to bring suit." *Id.* But it concluded that "[o]rdinarily . . . a claimant is required to submit some additional evidence of ownership along with his claim in order to establish standing to contest the forfeiture." *Id.* at 1113. It also "recognize[d] that ownership can be evidenced in a variety of ways" and that "[c]ourts generally look to indicia of dominion and control such as possession, title, and financial stake." *Id.*

Bates offers more than did the claimant in *$38,570 U.S. Currency*. To begin, he did not merely say the cash was his; he explained in a sworn declaration that he bought and sold vehicles and that he had given the disputed money to Kim and Conner to buy a truck. Claim [5] at 2. That says more than what was known in *$38,570 U.S. Currency*, yet, standing alone, it might still fall short. But there's more. Task-force officer Davis says that Kim stated, upon being asked about currency, "there is some money" in the truck that belonged to his "uncle." Davis Decl. [1-1] ¶ 19. Kim identified his uncle as Damon Bates. *Id.* ¶ 18. Kim also seemed to proffer the same truck-buying story that Bates relies on. *Id.* ¶ 19. This offers additional evidence.[2]

The Government acknowledges this account but argues that "[t]he story that Bates attempts to weave in an effort to explain his ownership interest in the Subject Property makes little sense." Gov't Mem. [12] at 11. Maybe so, but at the summary-judgment stage, the Court "must neither 'decide which party's version of the facts is more likely true' nor 'resolve

---

[2] The Court recognizes that Kim's statements—as conveyed by Davis—would constitute hearsay, but the Government never indicates that the information "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

swearing contests between litigants.'" *Funds in the Amount of $239,400*, 795 F.3d at 643 (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). The Court will not weight the evidence.

As to that evidence, the Government still says there was "inadequate dominion, possession, or control over" the seized funds. Gov't Mem. [12] at 16. But if Bates gave Kim and Conner his own money to buy a truck for Bates, then he was arguably a bailor with ownership interests in the money. *See* Restatement (Fourth) of Property § 9, Rights of Bailors (2022) (noting that "while a bailee has a right to exclusive possession superseding that of the bailor while the bailment lasts, the bailor's reversionary right to possession—especially where the bailor is the owner—is nevertheless superior to and may be asserted against an unauthorized third-party possessor").

There is, however, one caveat. Bates first claimed only $74,402 of the seized funds. Claim [5] at 2. He upped that amount in his interrogatory responses, first claiming a right to the entire $76,702.00, Ex. A [12-1] at 2, but later said he sent only $75,000, *id.* at 4. And Davis says Kim claimed that "$2,532.00 U.S. Currency . . . belonged to him." *Id.* ¶ 28. Thus, given that Kim claimed that $2,532 of the total $76,402 was his, and Bates admits that he only sent $74–75,000, Bates has established "a facially colorable interest," for Article III purposes, in only the $73,870 U.S. Currency that Kim did not claim as his own. *Kadonsky*, 216 F.3d at 508.

The Government is granted summary judgment on $2,532.00 U.S. Currency because, as to that currency, Bates's claim is unsupported by the evidence and Bates himself said that he gave either $74,000 or $75,000 to Kim and Conner—contradicting a claim for the full $76,402. As to the remaining $73,870, the Government's motion is denied.

B.     Failure to Comply with Rule G(6)

Rule G(8) provides that "the [G]overnment may move to strike a claim or answer" "for failure to comply with Rule G(5) or (6)." Fed. R. Civ. P. Supp. R. G(8)(c)(i)(A). And Rule G(6) says that, after the Government serves a Claimant with interrogatories, "[a]nswers or objections . . . must be served within 21 days." *Id.* G(6)(b). Moreover, "Rule 33 procedure otherwise applies to [Rule G(6)] interrogatories." Fed. R. Civ. P. Supp. R. G advisory committee's note to 2006 adoption.

The Fifth Circuit says that

> [d]iscovery by interrogatory requires candor in responding. This is not to say that a party must answer every interrogatory put by his adversary. . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive.

*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977). But "when the answers as a whole disclose a conscientious endeavor to understand the questions and to answer fully those questions as are proper, the rule has been satisfied." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2177, Answers to Interrogatories (3d ed. 2018).

Though the Government does not specifically identify the interrogatory answers that violate this standard, it does outline a handful of incomplete interrogatory answers in the section of its brief concerning standing. But because Bates is proceeding pro se, dismissal under Rule G(8) would be an unduly harsh sanction at this point.

For starters, though this issue has not been directly addressed by the Fifth Circuit, other Circuits have determined that a failure to respond to Rule G(6) interrogatories "does not, in itself, warrant striking [a claimant's] claim" where "Article III and statutory standing are not reasonably in dispute." *United States v. Real Prop. Located at 17 Coon Creek Rd., Hawkins Bar*

8

*Cal.*, 787 F.3d 968, 977 (9th Cir. 2015); *see also United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (finding that, where a claim is "sufficient to state a colorable 'ownership interest,'" "the district court abused its discretion in striking [the claim] for failure to adequately respond to the special interrogatories"), *overruled on other grounds by United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047 (8th Cir. 2019). Here, as discussed above, the Court found a colorable ownership interest.

Next, though the Government stresses that it has been patient with Bates and gave him ample time to answer the interrogatories, *see* Gov't Mem. [12] at 17, it never moved to compel responses, *see, e.g.*, *United States v. $45,000.00 in U.S. Currency*, No. 2:12-CV-181-KS-MTP, 2013 WL 4432177, at *1 (S.D. Miss. Aug. 14, 2013) (noting that it is more appropriate to keep a claim pending rather than strike it for Rule G(6) noncompliance (citing *United States v. Approximately $750,000.00 in U.S. Currency*, No. 10 Civ. 6069, 2011 WL 6155687, at *2–3 (S.D.N.Y. Dec. 8, 2011) (ordering claimant to respond to Government's special interrogatories rather than striking his claim))). The Government is thus denied summary judgment without prejudice as to the remaining $73,870 on the basis of Rule G(6) noncompliance.

IV. Conclusion

The Court has considered all arguments raised by the parties; those not discussed would not have changed the result. The Government is granted summary judgment as to $2,532 U.S. Currency and denied summary judgment as to the remaining $73,870. The parties are instructed to contact the Magistrate Judge within one week to reset the case-management conference.

**SO ORDERED AND ADJUDGED** this the 16th day of June, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE